**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Biolase, Inc., *et al.*,[1] | Case No. 24-12245 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 11/12/24 at 1 p.m. |
| | Re: D.I. 11, 17 & 66 |

**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE:**

**(i)      MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) GRANTING RELATED RELIEF; AND**

**(II) DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) DESIGNATING THE STALKING HORSE BIDDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (F) GRANTING RELATED RELIEF; AND (II)(A) APPROVING THE SALE OF THE DEBTORS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The official committee of unsecured creditors (the "Committee") appointed in the chapter 11 bankruptcy cases of the above-captioned debtors and debtors in possession (together, the "Debtors"), files this objection to the *Debtors' Motion for Interim and Final Orders (I) Authorizing*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Biolase, Inc. (2441); BL Acquisition Corp. (4140); BL Acquisition II, Inc. (6022); and Model Dental Office, LLC (9372). The Debtors' headquarters are located at 27042 Towne Centre Drive, Suite 270, Foothill Ranch, CA 92610-2811.

1

*the Debtors to Obtain Debtor-In-Possession Financing and Use Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* [D.I. 17] (the "<u>DIP Motion</u>")[2] and the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Designating the Stalking Horse Bidder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and* (C) *Granting Related Relief* (the "<u>Sale Motion</u>") [D.I. 11]. In support of this Objection, the Committee respectfully states as follows:

**<u>Preliminary Statement</u>**

1.     The Committee commends the Debtors and their professionals for running a successful sales process that yielded a significant overbid.  However, the Committee remains concerned that there will not be sufficient funds to pay administrative expense claims and/or to make a distribution to general unsecured creditors.  There is no plan for what happens after the sale or how these cases will be funded.  Rather, it appears the Debtors' primary secured creditor and DIP Lender, SWK Funding, LLC ("<u>SWK</u>"), wants to use these bankruptcy cases solely to liquidate its collateral solely for its benefit and then to run off into the sunset (without even providing for administrative expense claims).  Worse, SWK, through the DIP Motion, is trying to grab all (or most) unencumbered assets for its benefit at the direct expense of general unsecured creditors.

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

2. That outcome is not an acceptable result. SWK must pay the freight for the benefit of a 363 order that yields the highest value for its collateral.

3. The Committee also opposes the disbursement of the sale proceeds pending further order of the Court. SWK should not receive payment on its prepetition secured claim until the expiration of the Challenge Deadline and the conclusion of any litigation, including, under 506(c), marshalling or equities of the case exceptions. Further, there is unencumbered collateral being sold – the benefit of which should flow to general unsecured creditors not SWK. Finally, any breakup fee paid to the Staking Horse Bidder should be subject to the Debtors' setoff and/or recoupment rights.

## **Objection**

4. While final approval of the proposed DIP Facility remains within the Court's "informed discretion," the Court must balance the interests of the Debtors and unsecured creditors. That balance requires the Debtors to show that the proposed financing comports with basic notions of fairness and equity and will ultimately benefit of the Debtors' estates. See, *In re Aqua Associates*, 123 B.R. 192, 195-196 (Bankr. E.D. Pa. 1991) (Credit should not be approved when it is sought for the primary benefit of a party other than the Debtor.); *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990) (A proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.). Thus, while many chapter 11 debtors depend on postpetition financing to fund their continuing operations, a lender cannot overreach on the terms of its postpetition financing at the expense of unsecured creditors. See, *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) (The Court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors.).

5. The Debtors bear the burden of proving that: (a) the proposed financing is an exercise of sound and reasonable business judgment; (b) the financing is in the best interests of the estate and its creditors; (c) the transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business; (d) the terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and proposed lender; and (e) the financing was negotiated in good faith and at arm's length by the debtor, on the one hand, and the lender, on the other hand. See *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011).

6. Here, the Debtors have failed to meet their burden, and the terms of the DIP Facility, as set forth in more detail below, are unduly prejudicial to the rights of general unsecured creditors. Therefore, the Debtors entry into the DIP Facility must be denied or modified.

### *SWK Needs to Pay the Freight to Ensure Administrative Solvency*

7. SWK should not get a free option to run a sales process solely for its benefit while stripping unsecured creditors of all their rights and remedies.

8. SWK must ensure that the Debtors' estates are administratively solvent during and following a sales process that is being run solely for its benefit. Accordingly, the Debtors and the SWK must set forth a budget that establishes that the Debtors have sufficient cash to (i) pay all administrative expenses of these chapter 11 estates, (ii) fund wind down costs associated with confirming a chapter 11 plan, and (iii) provide a recovery for unsecured creditors The Court should not allow the bankruptcy process to be used solely to benefit a secured creditor. See, e.g., *In re Encore Healthcare Assocs.*, 312 B.R. 52, 54–56 (Bankr. E.D. Pa. 2004) (denying bidding procedures motion because court would not approve the sale, "the sole purpose of which was to liquidate assets for the benefit of the secured creditor," and which would render the estate

administratively insolvent, noting that an "asset sale can easily be accomplished outside of bankruptcy either with the consent of the secured creditor or by abandoning the asset to the secured creditor to sell on its own"); see also *Def. Drug Stores*, 145 B.R. at 317 (prohibiting "terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender.").

9. This Court has held that a secured lender cannot benefit from a section 363 sale unless they are willing to "pay the freight." To obtain the benefits of bankruptcy, a secured lender must ensure that the debtor's estate is administratively solvent after the sale. See, e.g., *In re Golden Cnty. Foods, Inc.*, No. 15-11062 (KG) (Bankr. D. Del. June 22, 2015), ECF No. 175 (final DIP financing order required that sale proceeds in excess of postpetition financing obligations be available to pay administrative expense claims prior to the payment of certain alleged prepetition secured debt); *In re Townsends, Inc., et al.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011, Hr'g Tr. at 23:25-24:01) (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate."); *In re NEC Holdings Corp.*, et al. Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010, Hr'g Tr. at 100:17-20) (secured creditors have "got to the pay the freight, and . . . the freight is certainly an administratively solvent estate.").

10. SWK should not be permitted to use the chapter 11 process to liquidate its collateral for its sole benefit. SWK should not be able to maximize the value of its collateral through a 363 sale; then simply force these cases to convert (especially without ensuring all administrative expense claims are paid).

11. By obtaining a lien on all unencumbered assets, SWK is putting unsecured creditors in a worse position than if the DIP facility and sales process were not approved and these cases converted to chapter 7.

12. While the Committee is hopeful that SWK will provide an acceptable proposal that will: (a) satisfy all chapter 11 administrative expenses, and (b) provide for a recovery to unsecured creditors—absent such acceptable proposal, the DIP facility should not be approved.

*There is No Need for Adequate Protection*

13. Adequate protection is meant to protect the diminution of collateral occasioned by imposition of the automatic stay. Here, there is no diminution of the collateral – the floor value of which was set by the Stalking Horse Bid. See *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 824 (Bankr. S.D.N.Y. 1982) ("Neither the legislative history nor the [Bankruptcy] Code indicate that Congress intended the concept of adequate protection to go beyond the scope of protecting the secured claim holder from a diminution in the value of the collateral."). A secured creditor must "prove this decline in value – or the threat of a decline – in order to establish a prima facie case." *In re Gunnison Ctr. Apts., LP*, 320 B.R. 391, 396 (Bankr. D. Colo. 2005).

*The Sale Proceeds Must be Escrowed Pending Expiration of Challenge Period*

14. Any sales proceeds must be escrowed pending expiration of the Challenge Period.

*The Releases and Distributions Contemplated by*
*the Final DIP Order Constitute a Sub Rosa Plan*

15. The DIP facility constitutes an impermissible *sub rosa* plan. This by itself is sufficient reason to deny the DIP facility. *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007).

16. A transaction is considered a *sub rosa* plan if it disposes of substantially all of the debtor's assets and dictates creditor recoveries. See *In Re Gulf Coast Oil Corp.*, 404 B.R. 407

(Bankr. S.D. Tex. 2009) ("Although the bankruptcy court need not turn every 363(b) hearing into a mini-confirmation hearing, the bankruptcy court must not authorize a 363(b) transaction if the transaction would effectively evade the 'carefully crafted scheme' of the chapter 11 plan confirmation process, such as by denying 1125, 1126, 1129(a)(7), and 1129(b)(2) rights."); *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983) ("The debtor and the bankruptcy court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets"); *In re Swallen's, Inc.*, 269 B.R. 634, 638 (6th Cir. BAP 2001) ("At least when a party in interest objects, a bankruptcy court cannot issue orders that bypass the requirements of Chapter 11, such as disclosure statements, voting, and a confirmed plan, and proceed to a direct reorganization on the terms the court thinks best, no matter how expedient that might be."); *In re Belk Props., LLC*, 421 B.R. 221, 226 (Bankr. N.D. Miss. 2009) (rejecting DIP financing agreement that dictated terms of plan of reorganization).

17.  Here, the DIP facility obligates the Debtors to pursue a fast-tracked sale for the sole benefit of SWK or else risk default and foreclosure.

18.  The DIP facility strips the unsecured creditors of any recovery they would have otherwise had by giving SWK a lien on all previously unencumbered assets under the guise of adequate protection. The procedural and substantive requirements of confirmation are designed to prevent this outcome. Thus, the DIP facility should be denied as an impermissible *sub rosa* plan.

***The SWK Should not get a Lien on Avoidance Actions or***
***the Proceeds of Avoidance Actions, Commercial Tort Claims and D&O Litigation***

19.  The granting of liens, security interests, superpriority claims and adequate protection claims in previously unencumbered assets in favor of SWK prejudices the rights of the Debtors' unsecured creditors. A debtor in possession may not pledge avoidance actions as security

7

for postpetition financing. See, *Official Comm. Of Unsecured Creditors v. Goold Electronics Corp. (In re Goold Electronics Corp.)*, 1993 U.S. Dist. LEXIS 14318, at *12 (N.D. Ill., Sept. 22, 1993) (vacating bankruptcy court order approving post-petition financing "to the extent that the order assigns to the bank a security interest in the debtor's preference actions."). This is because avoidance actions are not the personal property of a debtor's estate. See, e.g., 5 Collier on Bankruptcy ¶541.14 at n.1 ("The avoiding powers of a debtor in possession granted in chapter 5 of the [Bankruptcy] Code are not property of the estate but statutorily created powers to recover property."); see also, *In re Cybergenics, Corp.*, 226 F.3d 237, 244 (3rd Cir. 2000). Because Avoidance Actions are not property of the Debtors' estates, there is no legal basis for the Court to grant the SWK's liens and security interests, or a superpriority claim or adequate protection lien or claim on the Avoidance Actions or the proceeds of Avoidance Actions.

***There should be no 506(c) Waiver***

20. Paragraphs 15(a) and (b) of the Interim Order waive surcharge of collateral rights under section 506(c) of the Bankruptcy Code "subject to entry of the Final Order."

21. Section 506(c) ensures that a debtor in possession is entitled to recover expenses from its secured lender to the extent that those expenses are necessarily and reasonably associated with preserving or disposing of a secured lender's collateral. *In re Visual Industries, Inc.*, 57 F.3d 321, 325-326 (3rd Cir. 1995). A blanket prohibition of section 506(c) surcharges advances only the interests of SWK to the detriment of the Debtors' estates and permits SWK to enjoy a significant windfall to the extent that unencumbered estate funds are used to preserve, maintain, or dispose of the collateral. Other courts have refused to enforce such blanket prohibitions. See, H*artford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 150 F.3d 868, 872 (8th Cir. 1998) (holding "an agreement by the debtor and a secured creditor to prohibit

the payment of § 506(c) administrative expenses from the secured creditor's collateral would operate as a windfall to the secured creditor at the expense of administrative claimants. We therefore conclude that such a provision is unenforceable"). See also, *McAlpine v. Comerica Bank (In re Brown Brothers. Inc.)*, 136 B.R. 470, 474 (W.D. Mich. 1991) (holding "that a cash collateral order, which grants to the lender a post-petition lien on all of the debtor's assets, attempts to immunize the lender from surcharge payment obligations under § 506(c)) As debtors in possession, the Debtors have a fiduciary duty to all creditors to preserve and conserve the assets of their estates and maximize their value."). See *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985); *In re Marvel Entertainment Group. Inc.*, 140 F.3d 463, 473 (3d Cir. 1998). Furthermore, a section 506(c) waiver is not appropriate in the context of the Debtors' Chapter 11 Cases where the path to emergence is unclear and the proposed DIP facility does not provide for the payment of all administrative expenses.

*There Should be No Waivers of the Equities of the Case Exception*

22.     Paragraph 15(d) of the Interim Order waives the equities of the case exception under section 552(b) of the Bankruptcy Code "[u]pon entry of the Final Order and effective as of the Petition Date."

23.     Section 552(a) provides a general rule that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). However, section 552(b)(1) creates an exception to this general rule, which preserves a secured creditor's lien on post-petition "proceeds, products, offspring, or profits" of pre-petition collateral as long as the security agreement so provides. 11 U.S.C. § 552(b)(1). This section 552(b)(1) exception to the general rule is subject to a further exception (which would eliminate the secured

creditor's lien on post petition proceeds, products, offspring, or profits of pre-petition collateral) "to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b)(1).

24. The purpose of the "equities of the case" exception is to balance the need to preserve valid security interests in proceeds and the like with the need to protect the interests of unsecured creditors. See, e.g., *In re Photo Promotion Associates, Inc.*, 61 B.R. 936, 939-40 (Bankr. S.D.N.Y. 1986); *In re Muma Servs.*, 322 B.R. 541, 558-59 (Bankr. D. Del. 2005) (J. Walrath) (citing *Photo Promotion Associates, Inc.); In re Patio & Porch Sys., Inc.*, 194 B.R. 569, 575 (Bankr. D. Md. 1996) (citing authorities). For example, a debtor or other contributing parties may provide value that is used in combination with a secured creditor's collateral to generate assets (often cash) that could be considered proceeds of the secured creditor's collateral. See, *In re Photo Promotion Associates, Inc.*, 61 B.R. at 939-40. In this circumstance, the "equities of the case" exception allows the court to allocate value to the estate in order to avoid a windfall to the secured creditor.

25. Notably, the section 552(b)(1) exception to the general rule of section 552(a) is limited to proceeds generated by prepetition collateral, and does not apply to "after acquired" property obtained by the debtor or the estate postpetition that is not proceeds of prepetition collateral.

*There Should be No Waiver of the Marshaling Doctrine*

26. SWK does not have a perfected security interest in the Debtors' deposit accounts. The Debtors also should not be permitted to waive any rights with respect to the marshaling doctrine in the proposed Final Order. See Interim Order, ¶ 15(b). Such rights should be preserved for the Committee. Marshaling "prevent[s] the arbitrary action of a senior lienor from destroying

the rights of a junior lienor or a creditor having less security." *Meyer v. United States*, 375 U.S. 233, 237 (1963). The equitable doctrine of marshaling "requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." *In re Advanced Marketing Servs., Inc.*, 360 B.R. 421, 427 n.8 (Bankr. D. Del. 2007). Unsecured creditors' committees are permitted to seek application of marshaling for the benefit of unsecured creditors. See, e.g., *Official Comm. of Unsecured Creditors of America's Hobby Ctr., Inc. v. Hudson United Bank (In re America's Hobby Ctr., Inc.)*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998) ("Because a debtor in possession has all the rights and powers of a trustee . . . [the Committee] standing in the shoes of the debtor in possession . can assert this [marshaling] claim."). Subject to entry of a Final Order, the Debtors' seek a blanket waiver of this right for all creditors. See Interim Order, ¶ 15(b). This preemptive waiver of creditor rights against the lenders is not authorized by any provision of the Bankruptcy Code. Marshaling is a right of individual creditors against other creditors. It therefore cannot be waived or traded away by a debtor absent satisfaction of the stringent standards for grant of a third party release. See *In re Colad Grp.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) ("While the debtor may seek authority to waive its own rights, it cannot waive the marshaling rights of parties who have not consented and may not even have received notice of the debtor's motion."). The Debtors have made no attempt to, and cannot, satisfy that standard here.

27. There is no justification for the broad scope of the marshaling waiver. If this Court grants the Debtors' request to encumber certain unencumbered assets to secure the DIP facility and provide "adequate protection" to the SWK, the alleged secured lenders should be required to exhaust all other collateral before seeking satisfaction from the Debtors' unencumbered assets, the value of which would otherwise be available for the benefit of unsecured creditors.

**Sale Objection**

28.     The Committee does not oppose approval of the sale.  However, the sale proceeds must be escrowed pending a resolution with SWK on the issues identified above. Further, no breakup fee should be paid.  The Committee believes the Debtors may have setoff and recoupment rights for the Stalking Horse Bidder's continuing infringement of the Debtors' patents.  Those issues should first be adjudicated before the disbursement of the sales proceeds.

**WHEREFORE,** the Committee respectfully requests that the Court deny approval of the DIP Motion on a final basis, approve the Sale but require the sales proceeds to be escrowed with a full reservation of rights and grant such other and further relief as is just and proper.

Dated: November 7, 2024
     Wilmington, Delaware

>                     */s/ Scott J. Leonhardt*
>                     **ESBROOK P.C.**
>                     Scott J. Leonhardt (DE Bar No. 4885)
>                     1000 N. West Street, Suite 1200
>                     Wilmington, Delaware 19801
>                     302-650-7540
>                     Scott.leonhardt@esbrook.com
>
>                     **BRINKMAN LAW GROUP, PC**
>                     Daren R. Brinkman (CA Bar No. 158698)
>                     543 Counry Club Drive, Suite B
>                     Wood Ranch, California 93065
>                     Jory D. Cook (NY Bar No. 5251269)
>                     515 Madison Ave.
>                     9th Fl. New York, NY 10022
>                     Tel. (818) 597-2992
>                     Fax (818) 597-2998
>                     Email: firm@brinkmanlaw.com
>
>                     *Proposed Counsel for the Official Committee of Unsecured Creditors*