**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Biolase, Inc., *et al.*,[1] | Case No. 24-12245 (KBO) |
| Debtors. | (Jointly Administered) |
|  | Re: Docket No. 11 & 115 |

**ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon consideration of the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Designating the Stalking Horse Bidder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 11] (the "Motion"),[2] filed by the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and the Court having taken into consideration this Court's prior order, dated October 17, 2024 [Docket No. 115] (the "Bidding Procedures Order"), approving bidding

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Biolase, Inc. (2441); BL Acquisition Corp. (4140); BL Acquisition II, Inc. (6022); and Model Dental Office, LLC (9372).  The Debtors' headquarters are located at 27042 Towne Centre Drive, Suite 270, Foothill Ranch, CA 92610-2811.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Bidding Procedures, as applicable.

procedures for the sale of the Assets (the "Bidding Procedures") and granting certain related relief; and MegaGen Implant Co., Ltd., and any assignee or agent (the "Purchaser") having submitted the highest or best bid for the Purchased Assets (as defined in Purchaser's Asset Purchase Agreement attached hereto as Exhibit 1 ("Purchaser's APA")), which was declared the Successful Bid for the Purchased Assets pursuant to the Bidding Procedures; and this Court having conducted a hearing to consider the Sale and the transactions contemplated under the Purchaser's APA (the "Transactions") on November 12, 2024 (the "Sale Hearing"), at which all interested parties were offered an opportunity to be heard with respect to the Sale and the Transactions; and this Court having reviewed and considered: (i) the Motion and the exhibits thereto, (ii) the Purchaser's APA, whereby the Debtors have agreed, among other things, to sell the Purchased Assets to the Purchaser, including certain executory contracts and unexpired leases of the Debtors that will be assumed and assigned to the Purchaser (the "Assigned Contracts"), on the terms and conditions set forth in the Bidding Procedures Order, this Order, the Purchaser's APA, and any ancillary or supplemental documents executed in connection therewith, (iii) the First Day Declaration,[3] and the Sale Declaration,[4] (iv) the objections and reservations of rights filed or informally raised by parties in interest (collectively, the "Objections"), and (v) the arguments of counsel made, and the evidence proffered and adduced, at the Sale Hearing; and due notice of the Motion and this Order having been provided; and all objections to the Sale, the Transactions, and this Order having been withdrawn, resolved, or overruled on the merits; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in

---

[3]   *Declaration of John R. Beaver in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19].

[4]   *Declaration of Craig D. Warznak in Support of the Debtors' Motion for Entry of Orders (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. [205].

interest in these Chapter 11 Cases; and this Court having found that the Debtors' notice of the Sale and opportunity for a hearing on the Sale, including the adequacy of the Sale Notice and the Assumption Notices (defined below), were appropriate and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.     **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Purchaser's APA, pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order hereon under Article III of the United States Constitution.  Venue of these Chapter 11 Cases and approval of the Sale and the Transactions contemplated by the Purchaser's APA is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Statutory and Rule Predicates**.  The statutory and rule-based predicates for the approvals and authorizations herein, including for the Sale and the Transactions contemplated by the Purchaser's APA, are: (i) sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, and (iii) Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

D.      **Opportunity to Object**.  Proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise to be heard regarding the Sale Notice, the Assumption Notices, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the Sale, or the Transactions contemplated by the Purchaser's APA have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, and 9014, the Local Rules, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order.  The Debtors also gave due and proper notice of the potential assumption and assignment of each Assigned Contract available to be assumed by the Debtors and assigned to the Purchaser to each non-debtor party under each such Assigned Contract (collectively, the "Non-Debtor Counterparties") as reflected on certain *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of Substantially All Assets* filed on October 21, 2024 [Docket No. 120] (the "First Assumption Notice"), as further supplemented by that certain *Amended Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale of Substantially All Assets* filed on October 24, 2024 [Docket No. 139] (the "Supplemental Assumption Notice", and together with the First Assumption Notice, collectively,

the "Assumption Notices").  Such notice was good, sufficient, and appropriate under the particular circumstances, and, in the absence of an objection that is filed and served in accordance with the applicable Assumption Notice, the Non-Debtor Counterparties are hereby deemed to consent to the relief granted herein unless otherwise provided in this Order.  No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Sale Notice, the Assumption Notices, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the Sale, the Transactions contemplated by the Purchaser's APA, or of the entry of this Order is necessary or shall be required.

      E.    **Notice**.  The Debtors gave due and proper notice of the Sale on October 17, 2024 (the "Sale Notice") [Docket No. 116].   The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances and no further notice need be given with respect to the proposed Sale.  As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the DIP Lenders and the Prepetition SWK Secured Parties; (iii) counsel for the Committee; (iv) all persons known, or reasonably believed to have asserted, any lien, claim, interest, or encumbrance in the Assets; (v) all Non-Debtor Counterparties; (vi) the Attorneys General in the State(s) where the Assets are located; (vii) all state and local taxing authorities in the State(s) where the Assets are located; (viii) the Internal Revenue Service; (ix) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002 or any applicable Local Rule, all creditors (whether their Claims are liquidated, contingent, or unmatured) of the Debtors; and (x) all entities that heretofore entered into non-disclosure agreements with the Debtors with respect to potential purchase of the Debtors'

businesses and assets.  Other parties interested in bidding on the Assets, including the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to submit a bid.

F.    **Final Order**.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and authorizes the closing of all Transactions contemplated hereby without regard to any stay or delay in its implementation.

G.    **Sound Business Purpose**.  The Debtors, in a reasonable exercise of their business judgment, have demonstrated a sufficient basis and the existence of reasonable, appropriate, and compelling circumstances requiring them to enter into the Purchaser's APA, transfer the Purchased Assets, and assume and assign the Assigned Contracts to the Purchaser under sections 363 and 365 of the Bankruptcy Code, and such actions are entirely fair and appropriate exercises of the Debtors' reasonable business judgment and in the best interests of the Debtors, their estates and their stakeholders.

H.    **Compliance with Bidding Procedures Order**.  The Debtors, the Purchaser, and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order and the bidding process was free of any fraud, collusion, or unfair dealing.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at, or prior to, the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded all

potentially interested parties a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Assets, (b) provided all interested parties, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Bidding Procedures (the "<u>Bid Deadline</u>").

I.      **<u>Good Faith</u>**.  The Purchaser's APA was not entered into, and the Sale is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.  The Debtors and the Purchaser were each represented by separate and independent advisors throughout the negotiation of the terms of the Purchaser's APA.  All payments and other consideration (including the credit bidding of secured debt) to be made by the Purchaser in connection with the Transactions contemplated by the Purchaser's APA have been disclosed. Neither the Debtors nor the Purchaser are proposing to consummate the Sale fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J.      The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the purchase of the Purchased Assets and the consummation of the Transactions.  The Purchaser's APA was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchaser's APA, or to the consummation of the Transactions contemplated thereby, and

the transfer of the Purchased Assets, and the Assigned Contracts, to the Purchaser.  The Purchaser is purchasing the Purchased Assets (including the Assigned Contracts) in good faith and is a good faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser fully complied with all of the provisions of the Bankruptcy Code, the Bidding Procedures Order, and the Bidding Procedures; (iii) there was no fraud, collusion, or unfair dealing in connection with the bidding process and the sale of the Purchased Assets; (iv) the Purchaser has fully disclosed all of its connections with the Debtors; (v) all consideration to be paid or provided to the Debtors by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed; (vi) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiations and execution of the Purchaser's APA and any other agreements or instruments related thereto were in good faith and free from any collusion, fraud, or unfair dealing.

K.    **Highest or Best Value**.  (i) The Debtors and their advisors conducted a fair, extensive, and open sale process that complied with the Bidding Procedures and the Bidding Procedures Order in all respects; (ii) the sale process and the Bidding Procedures set forth in the Bidding Procedures Order were: (a) non-collusive, (b) substantively and procedurally fair to all parties in interest, (c) duly noticed, (d) provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets, and (e) resulted in a fair bidding process; (iii) the process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets for the Debtors and their estates, and any other

transaction would not have yielded as favorable an economic result; (iv) the Purchaser has put forth the highest or otherwise best offer for the Purchased Assets pursuant to the terms of the Bidding Procedures Order; (v) the Purchase Price received by the Debtors for the Purchased Assets, after considering all of the relevant facts and circumstances of the Sale as a whole, is fair; and (vi) the Bidding Procedures resulted in the highest or best value for the Purchased Assets for the Debtors and their estates.

L.       The Debtors determined, in a valid and sound exercise of their business judgment and after a robust and extensive marketing process, the Transactions contemplated by the Purchaser's APA represented the highest or otherwise best bid.  Therefore, the Purchaser's bid was designated the Successful Bid for the Purchased Assets.  The Bidding Procedures have been complied with in all respects by the Debtors and the Purchaser and afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer for the Purchased Assets.

M.       The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Purchaser's APA neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan or reorganization of the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

N.       **Fair Consideration**.  The offer of the Purchaser, upon the terms and conditions set forth in the Purchaser's APA, including the form and total consideration (including the Purchase Price (as defined in the Purchaser's APA)) to be realized by the Debtors pursuant to the Purchaser's APA:  (i) is the highest or best offer received by the Debtors and their estates, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' stakeholders and estates, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, and (v) will

provide a greater recovery for the Debtors' creditors, and other interested parties than would be provided by any other practically available alternative. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

O.     **Validity of Transfer**. The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates. The Debtors have full corporate power and authority to execute the Purchaser's APA (and all other documents contemplated thereby) and to consummate the Transactions contemplated thereby, and the sale or transfer of the Purchased Assets has been duly and validly authorized by all necessary corporate actions on the part of the Debtors' estates. No consents or approvals, other than as may be expressly provided for in the Purchaser's APA are required by the Debtors' estates to consummate such Transactions.

P.     [Reserved].

Q.     [Reserved].

R.     **Satisfaction of 363(f) Standards**. The Debtors are authorized to sell the Purchased Assets free and clear of the Liens, Claims, and Interests, other than Assumed Liabilities, Permitted Liens, and as otherwise provided in the Purchaser's APA (with the Liens, Claims, and Interests attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that the Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Each creditor or other person or entity asserting a Lien, Claim, or Interest in the Purchased Assets (i) has, subject to the terms and conditions of this Order, consented to the Sale and Transactions or is deemed to have consented to the Sale and

Transactions, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of the Liens, Claims, and Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale and Transactions or the Motion are deemed to have consented to the Motion, Sale, and Transactions pursuant to section 363(f)(2) of the Bankruptcy Code.  Creditors or other persons or entities asserting a Lien, Claim, or Interest in or against the Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest.

S.     The Purchaser would not have entered into the Purchaser's APA and would not consummate the Transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors: (i) if the sale of the Purchased Assets was not free and clear of all Liens, Claims, and Interests, including, without limitation, any rights, Liens, Claims, or Interests based on any successor or transferee liability, or (ii) if Purchaser would, or in the future could, be liable for any Liens, Claims, or Interests, including, without limitation, any rights, Liens, Claims, or Interests based on any successor or transferee liability.  The Purchaser will not consummate the Transactions contemplated by the Purchaser's APA unless this Court expressly orders that none of the Purchaser, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, and Interests, including rights or claims based on any successor or transferee liability other than as expressly set forth in the Purchaser's APA.

T.      Not selling the Purchased Assets free and clear of all Liens, Claims, and Interests would adversely impact the Debtors' estates, and the sale of Purchased Assets other than free and clear of all Liens, Claims, and Interests would be of substantially less value to the Debtors' estates.

U.      Except with respect to the Permitted Liens that the Purchaser has expressly agreed to permit to survive the Closing pursuant to the express terms of the Purchaser's APA, the Liens shall attach to the consideration to be received by the Debtors (if any) in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the Transactions contemplated by the Purchaser's APA (the "Closing"), and the Purchaser would not enter into the Purchaser's APA to purchase the Purchased Assets or proceed to the Closing otherwise.

V.      **Transfer of Assets Free and Clear**.  The transfer of the Purchased Assets to the Purchaser free and clear of any Liens, Claims, and Interests will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds (if any) of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred and estopped from pursuing or asserting such Liens (subject to the Permitted Liens that the Purchaser has expressly agreed to permit to survive the Closing pursuant to the express terms of the Purchaser's APA against the Purchaser, or any of its respective assets, property, successors or assigns, or the Purchased Assets.  The Purchaser shall have no obligations with respect to any Liens, Claims, and Interests against the Debtors.

W.    **Assumption and Assignment of Assigned Contracts**.    The Debtors have advanced sound business reasons for entering into the Purchaser's APA and transferring, or assuming and assigning (with respect to the Assigned Contracts), the Purchased Assets, as more fully set forth in the Motion and the Purchaser's APA, and as demonstrated at the Sale Hearing, and it is entirely fair to all parties in interest, and a reasonable exercise by the Debtors of the Debtors' business judgment to transfer, or assume and assign (with respect to the Assigned Contracts), the Purchased Assets to the Purchaser and to consummate the Transactions contemplated by the Purchaser's APA with the Purchaser.    Each and every provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assigned Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.    All counterparties of the Assigned Contracts that did not or do not timely file an objection to the assumption and/or assignment of the Assigned Contract(s) to which they are a counterparty are deemed to consent to the assumption and/or assignment by the Debtors of their Assigned Contract to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.    All Non-Debtor Counterparties for which the deadline to file an objection to the assumption and assignment to Purchaser has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and/or assignment by the Debtors of their Assigned Contract to the Purchaser effective as of the Closing Date, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and/or

assignment without the necessity of obtaining such Non-Debtor Counterparty's consent to the assumption or assignment thereof.  If an objection to the Cure Amount timely filed with respect to an Assigned Contract cannot be resolved by the parties, the Debtors may, after consultation with the Purchaser, assume and assign the applicable contract(s) or lease(s) pending resolution of such objection in accordance with the Bidding Procedures Order.  Upon the assignment and sale to the Purchaser in accordance with the terms of the Purchaser's APA, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer. To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of the Purchaser's APA and, other than with respect to Assumed Liabilities, the Purchaser shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that arose or occurred prior to the Closing and (ii) claims, counterclaims, or offsets, with respect to such Assigned Contract, that relate to any acts or omissions that arose or occurred prior to the Closing.  The Purchaser shall not assume or become liable for any Liens, Claims, and Interests relating to the Purchased Assets, except as may be expressly set forth in the Purchaser's APA.

X.     Pursuant to the Purchaser's APA, the Cure Amounts will be paid by the Debtors and the Purchaser, as applicable, in accordance with the terms of this Order and the Purchaser's APA.  The Purchaser has demonstrated adequate assurance of future performance of each Assigned Contract within the meaning of section 365 of the Bankruptcy Code that is assumed by the Purchaser or any of its permitted assignees to which such Assigned Contract is assumed and/or

assigned by the Debtors, including a promise to perform the Debtors' obligations under such Assigned Contract for periods at or after the Closing.  The Cure Amounts are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts that are assumed.  The Debtors' payment of Cure Amounts in accordance with the terms of this Order and the Purchaser's APA and the Purchaser's promise under the Purchaser's APA to perform the obligations under the Assigned Contracts as of the Closing shall constitute adequate assurance of future performance under such Assigned Contracts.  Any objections to the Cure Amounts, to the extent not otherwise resolved, are hereby overruled.  To the extent that any counterparty failed to timely object to its Cure Amount or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Amount and to the assignment of its respective Assigned Contract(s) to the Purchaser and to have waived any other defaults or breaches.  The Court finds that with respect to all Assigned Contracts, the payment of the Cure Amounts as provided in this Order and the Purchaser's APA is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Purchaser, of each Assigned Contract to be assumed and/or assigned to the Purchaser as of Closing.

Y.      The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Purchaser's APA and is in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represents an exercise by the Debtors of the sound and prudent business judgment of the Debtors and their estates.

Z.      **Notice**.  The notice and opportunity to object provided to all parties in interest, as set forth in the Bidding Procedures Order and the Purchaser's APA, fairly and reasonably protects any rights of any party in interest.

AA.     **No Successor or Other Derivative Liability**.  The Transactions contemplated by the Purchaser's APA do not amount to a consolidation, merger, or *de facto* merger of the Purchaser, on the one hand, and any of the Debtors and/or their estates, on the other.  There is not substantial continuity between the Purchaser, on the one hand, and the Debtors, on the other.  There is no continuity of enterprise between the Debtors and the Purchaser.  The Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser is not a successor to any of the Debtors or their estates.

BB.     **Fair Purchase Price**.  The total consideration provided by the Purchaser for the Purchased Assets constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, entirely fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.  The Sale and the Purchase Price were negotiated in good faith and are fair and the product of good faith negotiations among the parties.

CC.     **Waiver of Bankruptcy Rules 6004 and 6006**.  The Debtors and the Purchaser will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the Transactions contemplated by the Purchaser's APA at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to any stay, including, without limitation, as provided by Bankruptcy Rules 6004(h), 6006(d), and any applicable Local Rule.

DD.    Time is of the essence in consummating the Sale.  To maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur as promptly as possible and, in all events, within the time constraints set forth in the Purchaser's APA.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

EE.    **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion, the First Day Declaration, the Sale Declaration, and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Motion is Granted**.  The relief requested in the Motion is **GRANTED** as set forth herein and the Sale, and the Transactions contemplated by the Purchaser's APA, are hereby approved, subject to the terms and conditions contained herein.

2.    **Objections Overruled**.  Except as otherwise set forth herein, all Objections, responses, reservations of rights, and requests for continuance concerning approval of the Sale, if any, are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such Objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is overruled and denied on the merits with prejudice.  All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.    **Notice**.  Notice of the Sale Hearing, including as set forth in the Sale Notice and the Assumption Notices, was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, and 6006, the Local Rules, and as required by the Bidding Procedures Order.

4.      **Fair Purchase Price**.  The sale of the Purchased Assets and the consideration provided by the Purchaser under the Purchaser's APA are entirely fair and reasonable, the highest or otherwise best offer for the Purchased Assets, shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and were the result of a fair bidding process.  The Sale of the Purchased Assets to the Purchaser is a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent of any person or entity.

5.      The Purchaser is hereby granted, and is entitled to, all the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assigned Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

6.      **Approval of the Sale and the Transactions**.  Subject to the terms of this Order, the sale of the Purchased Assets, the terms and conditions of the Purchaser's APA (including all schedules and exhibits affixed thereto), and the Transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects, and shall be enforceable against each of the parties thereto.  The Debtors have satisfied all requirements of sections 363(b), 363(f), and 365 of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of the Liens, Claims, and Interests (other than Permitted Liens).

7.      The failure specifically to include any particular provisions of the Purchaser's APA or any of the documents, ancillary documents, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, Purchaser's APA, or instrument, it being the intent of the Court, the Debtors, and the Purchaser, that the Purchaser's

APA and each document, ancillary document, or instrument be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing, and each such provision shall be enforceable by or against each of the parties thereto.

8.    **Consummation of Transactions**.  The Debtors, in transferring the Purchased Assets pursuant to this Order and sections 363 of the Bankruptcy Code, are deemed, under section 1107(a) of the Bankruptcy Code, to have all rights and powers to perform all of the functions and duties of a trustee serving in a bankruptcy case, and will transfer the property pursuant to this Order.

9.    The Debtors and their employees, professional advisors, and agents shall be, and hereby are, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Purchaser's APA, together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Purchaser's APA, this Order, and/or the sale of the Purchased Assets, including, without limitation, the certificates, deeds, assignments, and other instruments of transfer, and to take all further actions (i) as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets or Assumed Liabilities or (ii) as may be necessary or appropriate to the performance of the obligations of the Debtors' estates in accordance with, or as contemplated by, the Purchaser's APA, without any further corporate action or orders of this Court.

10.    The Debtors and each other person or entity having duties or responsibilities under the Purchaser's APA, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, attorneys,

and other retained professionals are authorized and empowered, subject to the terms and conditions contained in the Purchaser's APA and this Order, to carry out all of the provisions of the Purchaser's APA and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Purchaser's APA and any related agreements or instruments; to take any and all actions contemplated by the Purchaser's APA, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Purchaser's APA, any related agreements or instruments, and this Order and the Transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, managers, employees, members, agents, representatives, and attorneys of such entities. The Debtors' officers, on behalf of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtors and the Purchaser are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Entity any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Transactions contemplated by the Purchaser's APA, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable

Governmental Entities or as the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of formation of each corporate Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Entities with respect to the implementation and consummation of the Purchaser's APA, any related agreements or instruments and this Order, and the Transactions contemplated thereby and hereby.

11.     Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchaser's APA and this Order. This Order and the Purchaser's APA shall be binding upon, and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in, or to, the Purchased Assets.

12.     Pursuant to section 525 of the Bankruptcy Code, no Governmental Entity may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of the Debtors' bankruptcy cases or the consummation of the Transactions contemplated by the Purchaser's APA.

13.     Except as otherwise expressly provided in the Purchaser's APA, all persons presently on or after the Closing Date in possession of some or all of the Purchased Assets are

directed to surrender possession of the Purchased Assets to the Purchaser, as applicable, on the Closing Date or at such time thereafter as the Purchaser may request.  For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to Purchaser in accordance with the Purchaser's APA and this Order.

14.    **Transfer of Assets Free and Clear**.  To the fullest extent permitted by law, effective as of the Closing, (a) the assumption of the Assumed Liabilities shall constitute a legal, valid, and effective assumption by Purchaser of all Assumed Liabilities and (b) the transfer of the Purchased Assets to the Purchaser, shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person.  The Debtors are authorized to transfer, and upon the Closing shall transfer to the Purchaser, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets, which shall be immediately vested in Purchaser, and such title to the Purchased Assets, including, without limitation, with respect to intellectual property identified in the Purchaser's APA or any instrument relating thereto and all tangible and intangible assets, personal property, goodwill, brand and related likenesses constituting Purchased Assets, shall be transferred to Purchaser free and clear of the Liens, Claims, and Interests (other than Assumed Liabilities and Permitted Liens) pursuant to section 363(f) of the Bankruptcy Code, including:

(a)    liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges of any kind or nature, indentures, loan agreements, instruments, leases, subleases, capital leases, encroachments, licenses, burdens, options, privileges, deeds of trust, security interests, equity interests, conditional sale or other title retention agreements, covenants, pledges, judgments, demands, guarantees, encumbrances, easements, defects in title, servitudes, regulatory violations by any governmental entity, decrees of any court or foreign or domestic

governmental entity, and debts arising in any way in connection with any agreements, acts, or failures to act;

(b) interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c) rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date), rights of setoff, rights of way, contract rights, subrogation rights, exoneration rights, labor rights, equitable rights, employment rights, pension rights, and rights of recovery;

(d) decrees of any court or foreign or domestic government entity (to the extent permitted by law);

(e) charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation, consent of any Person to assign or transfer any of the Purchased Assets;

(f) debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

(g) claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, subrogation claims, exoneration claims, alter-ego claims, products liability claims, environmental claims (including, without limitation, toxic tort claims), labor claims, pension claims, equitable claims, including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, adverse claims of any kind, and pending litigation claims;

(h) matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories;

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected,

allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or

unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing (each, a "Lien, Claim, or Interest," and collectively, the "Liens, Claims, and Interests").  The Liens (other than Permitted Liens), Claims, and Interests shall attach to the proceeds (if any) of the sale with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order, subject to any Claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

15.    Following the Closing Date, no holder of any Liens, Claims, or Interests in the Purchased Assets shall interfere with the Purchaser's enjoyment of the Purchased Assets based on or related to such Liens, Claims, or Interests, or any actions that the Debtors may take in these Chapter 11 Cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the Transactions contemplated by the Purchaser's APA or this Order.

16.    The provisions of this Order authorizing the sale of the Purchased Assets free and clear of any Liens, Claims, and Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or any other instruments to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors, the Purchaser, and each of their respective officers, employees, attorneys, other retained professionals, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents, releases, terminations, and instruments that either the Debtors or the Purchaser deem necessary, desirable, or appropriate to implement

and effectuate the terms of the Purchaser's APA and this Order, including amendments to the Purchaser's APA and the release of Liens, Claims, and Interests set forth in this Order.

17.     **General Assignment**.  The Purchased Assets to be acquired by the Purchaser under the Purchaser's APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to, and vested in, the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered, and shall constitute, for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interest in the Purchased Assets under the Purchaser's APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

18.     **Release of Interests**.  On or before the Closing Date, each of the Debtors' creditors are authorized and directed to execute such documents, releases, or terminations, and take all other actions as may be necessary, desirable, or appropriate to release, effective as of the Closing, their respective Liens, Claims, and Interests of any kind against the Purchased Assets, as such Liens, Claims, and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, or other documents or agreements evidencing any Liens, Claims, or Interests against or on the Purchased Assets (subject to the Permitted Liens that the Purchaser has expressly agreed to permit to survive the Closing pursuant to the express terms of the Purchaser's APA) shall not have delivered to the Debtors on or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all liens and easements, and any other documents necessary, desirable, or appropriate for the purpose of documenting the release of all Liens, Claims, Interests, encumbrances, or liabilities (other than Assumed Liabilities and Permitted Liens) that the person or entity has or may assert with respect to the Purchased Assets, the Debtors

and the Purchaser are hereby authorized to execute and file such statements, instruments, releases, terminations, and other documents on behalf of the person or entity with respect to the Purchased Assets. The Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Interests, encumbrances, or liabilities against the Purchased Assets (other than the Assumed Liabilities and Permitted Liens). This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

19.  This Order: (i) shall be effective as a determination that, as of the Closing, all Liens, Claims, and Interests, except as expressly assumed as an Assumed Liability by the Purchaser pursuant to the express terms of the Purchaser's APA, have been unconditionally released, discharged and terminated as to Purchaser and the Purchased Assets owned by the Debtors and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county, and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee and owner of the Purchased Assets, and ownership of the Purchased Assets owned by the Debtors is free and clear of any Liens, Claims, and Interests or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized to strike recorded encumbrances and other interests against the Purchased Assets owned by the

Debtors recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, Liens, Claims, Interests, pledges, and other interests against the Purchased Assets owned by the Debtors recorded prior to the date of this Order.  All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary, advisable or appropriate, and appropriate to consummate the Transactions contemplated by the Purchaser's APA.

20.    The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Entity relating to the Purchased Assets or held by the Debtors' estates, and to the greatest extent available under applicable law, all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any Governmental Entity are deemed to have been, and hereby are, deemed to be transferred to the Purchaser, as of the Closing Date.  Furthermore, the business covered by the Purchased Assets shall continue operating under all existing licenses of the Debtors until such licenses have been changed to the name of the Purchaser, including but not limited to local occupational licenses, and any other licenses need to operate such business with no interruption to the business.

21.    **Rights of Secured Parties**.  Nothing in this Order shall limit the rights of the Prepetition SWK Secured Parties or the DIP Lenders under the Final DIP Order.

22.    **Assumption and Assignment of Assigned Contracts**.  Subject to the terms of the Purchaser's APA and the occurrence of the Closing Date, the assumption by the Debtors of the Assigned Contracts, as provided for or contemplated by the Purchaser's APA and the Assumption

Notices, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

23.     The Assigned Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Amounts (if any) solely to the extent set forth in the Assumption Notices.

24.     The Debtors and the Purchaser have satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under all of the Assigned Contracts.  No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Assumption Notices or the assumption and assignment of the Assigned Contracts is necessary or shall be required.

25.     Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in, and to, each of the Assigned Contracts.  The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

26.     Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, on the Closing Date, the Debtors shall pay or cause to be paid to the Non-Debtor Counterparties the requisite Cure Amounts, if any, set forth on the Assumption Notices, except to the extent that (i) a Cure Amount was amended on the record of the Sale Hearing, (ii) a different Cure Amount is agreed as between the Non-Debtor Counterparties and the Debtors, or (iii) as to be determined by Court order.  Except as otherwise set forth in this Order, the Cure Amounts (if any) are binding on all Non-Debtor Counterparties and are hereby fixed at the amounts (including any amount listed as $0.00) set forth on the Assumption Notices and shall

not be subject to any challenge or objection by any party.  Except as set forth in this Order, the

Non-Debtor Counterparties are forever barred from asserting any other claims, including, but not

limited to, the propriety or effectiveness of the assumption and assignment of the Assigned

Contracts against the Debtors, the Purchaser, or the property of any of them in respect of the

Assigned Contracts.  Except as set forth in this Order, all of the Non-Debtor Counterparties shall

be fully and finally bound by the Cure Amount listed on the Assumption Notices and any challenge

to any Cure Amount is hereby deemed waived and released.

27.      Any provision in any Assigned Contract that purports to declare a breach, default,

or payment right as a result of an assignment or a change of control in respect of the Debtors is

unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to

payment of the appropriate Cure Amounts, if any.  No sections or provisions of any Assigned

Contract that purport to provide for additional payments, penalties, charges, or other financial

accommodations in favor of the Non-Debtor Counterparties shall have any force and effect with

respect to the Sale and assignments authorized by this Order, and such provisions constitute

unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are

otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any

Assigned Contract pursuant to the terms of the Purchaser's APA shall in any respect constitute a

default under any Assigned Contract.

28.      Each and every provision of the Assigned Contracts or applicable non-bankruptcy

law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting,

or conditioning assignment of any Assigned Contract has been or will be satisfied or is otherwise

unenforceable under section 365 of the Bankruptcy Code.  All counterparties of the Assigned

Contracts that did not or do not timely file an objection to the assumption and/or assignment of the

Assigned Contract(s) to which they are a counterparty are deemed to consent to the assumption and/or assignment by the Debtors of their Assigned Contract to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.  All counterparties of the Assigned Contracts for which the deadline to file an objection to the assumption and assignment or Cure Amount has passed as of the date of entry of this Order, and that did not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and/or assignment by the Debtors of their Assigned Contract to the Purchaser effective as of the Closing Date, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.  If an objection to the Cure Amount timely filed with respect to an Assigned Contract cannot be resolved by the parties, the Debtors may assume and assign the applicable contract(s) or lease(s) pending resolution of such objection in accordance with the Bidding Procedures Order.  Upon the assignment and sale to the Purchaser in accordance with the terms of the Purchaser's APA, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their affiliates, predecessors, successors, or assigns, shall have no further liability or obligation under the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of the Purchaser's APA and, other than

with respect to Assumed Liabilities (as defined in the Purchaser's APA), the Purchaser shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that arose or occurred prior to the Closing Date and (ii) claims, counterclaims, or offsets with respect to such Assigned Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

29.     All defaults or other obligations under the Assigned Contracts arising prior to the Closing Date (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by entry of this Order, or as applicable, payment of the Cure Amounts (if any) on the Assumption Notices and the counterparties to the Assigned Contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any amounts are due or other defaults exist under such Assigned Contract as of the date of the assignment of such Assigned Contract.

30.     Notwithstanding anything to the contrary in this Order, in the event that the Sale does not close, none of the Assigned Contracts shall be assumed by virtue of this Order and shall remain subject to further administration in these Chapter 11 Cases.

31.     **No Successor or Other Derivative Liability**.  The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation (other than the Assumed Liabilities) of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability.  Neither the transfer of the Purchased Assets to the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously owned by the Debtors, will cause the Purchaser or any of its affiliates, to be deemed a

successor in any respect to the Debtors' business or an alter ego, mere continuation, or substantial continuation of the Debtors within the meaning of any foreign, federal, state or local revenue, pension, ERISA, the WARN Act (as defined below), tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

32.     Further, the transfer of title and possession of the Purchased Assets shall be free and clear of any Liens, Claims, and Interests pursuant to any successor or successor-in-interest liability theory, and, for the avoidance of doubt, the Purchaser, and each of its affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever (other than the Assumed Liabilities) for any Liens, Claims, and Interests, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Purchaser's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Liens, Claims, and Interests based on, relating to, and/or arising under, without limitation: (i) any employment or labor agreement; (ii) any pension, welfare, compensation or other employee plan, agreements, practices, and programs, including, without limitation, any pension or employee plan of, or related to, any of the Debtors or any Debtors' affiliates or predecessors or any current or former employees of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to: (a) the Employee Retirement

Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) the Multiemployer Pension Plan Amendments Act of 1980; (k) state and local discrimination laws, (l) state and local unemployment compensation laws or any other similar state and local laws, (m) state workers' compensation laws, and/or (n) any other state, local, or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (vi) any antitrust laws; (vii) any product liability or similar laws, whether state, federal, or otherwise; (viii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (ix) Perishable Agricultural Commodities Act; (x) any bulk sales or similar laws; (xi) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xii) any common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, and/or any other theory of or related to successor liability.

33.     Other than the Assumed Liabilities the Purchaser has expressly agreed to assume pursuant to the express terms of the Purchaser's APA, the Purchaser is not assuming nor shall it or any Affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise,

for any Liabilities of the Debtors in any way whatsoever, including any Liabilities relating to or

arising from the Debtors' ownership or use of the Purchased Assets prior to the Closing Date, or

any Liabilities calculable by reference to the Debtors or their operations or the Purchased Assets,

or relating to continuing or other conditions existing on or prior to the Closing Date, which

Liabilities are hereby extinguished insofar as they may give rise to liability, successor or otherwise,

against the Purchaser or any affiliate of the Purchaser.

34.     Except as otherwise provided in the Purchaser's APA, pursuant to sections 105 and

363 of the Bankruptcy Code, all persons, including, but not limited to, the Debtors, all debt holders,

equity security holders, the Debtors' employees or former employees, Governmental Entities,

lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or

holding a Lien, Claim, or Interest of any kind or nature whatsoever against, in, or with respect to

any of the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any

way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior

to the Closing Date, or the transfer of the Purchased Assets to the Purchaser in accordance with

the Purchaser's APA and this Order, shall be forever barred and estopped from asserting,

prosecuting, or otherwise pursuing such Lien, Claim, or Interest, including assertion of any right

of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award,

decree, or order, against the Purchaser or any affiliates, successors or assigns thereof and each of

their respective current and former members, officers, directors, attorneys, employees, partners,

affiliates, financial advisors, and representatives (each of the foregoing in its individual capacity),

with respect to the Purchased Assets.

35.     Without limiting the generality of the foregoing, the Purchaser shall not assume or

be obligated to pay, perform, or otherwise discharge any workers' compensation Liabilities of the

Debtors arising pursuant to state law or otherwise, and this Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation Claims filed or to be filed, or any reopening of such Claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

36.    The Purchaser has not assumed, or is otherwise not obligated for, any of the Debtors' liabilities other than the Assumed Liabilities, and the Purchaser has not purchased any of the Debtors' assets expressly excluded from the Purchased Assets.  Consequently, all persons, Governmental Entities and Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens based upon or arising out of liabilities retained by the Debtors may not take any action against the Purchaser or the Purchased Assets to recover on account of any liabilities of the Debtors.  All persons holding or asserting any Liens in the Excluded Assets may not assert or prosecute such Liens or any cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets or any other Excluded Liability (as defined in the Purchaser's APA).

37.    Any party to a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code to the extent that such contract is an Assigned Contract.

38.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assigned Contracts shall have no claims against the Purchaser relating to any assignment fee, Cure Amounts, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing Date, except for any amounts that are Assumed Liabilities.

39.     **Transfer Taxes**.  Any Liens, Claims, and Interests of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax, or similar tax arising from the transfer of the Purchased Assets to the Purchaser shall be filed against the Debtors' estates and shall not be asserted against the Purchaser.  Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Governmental Units and Persons (as defined in sections 101(27) and 101(41) of the Bankruptcy Code, respectively) are hereby enjoined from taking any action against the Purchaser to recover any claim which such Person or Governmental Unit has or may assert against the Debtors (as such claims exist immediately prior to the Closing) relating to a stamp, transfer tax, or similar tax arising from the transfer of the Purchased Assets to the Purchaser.

40.     **Bulk Sales**.  No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions contemplated by the Purchaser's APA.

41.     **Statutory Mootness**.  Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Purchaser's APA at any time, subject to the express terms of the Purchaser's APA.  In the absence of any person obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Purchaser's APA, the Debtors and the Purchaser shall be deemed to be acting in "good faith" and the Purchaser shall be entitled to the protections of section 363(m)

of the Bankruptcy Code as to all aspects of the Transactions contemplated by the Purchaser's APA if this Order or any authorization contained herein is reversed or modified on appeal.

42.   **Modification of Purchaser's APA**.   Subject to the terms of the Purchaser's APA, the Purchaser's APA and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors' estates.

43.   **Binding Effect**.   This Order and the Purchaser's APA shall be binding on and inure to the benefit of all successors and assigns of the Debtors and the Purchaser.

44.   This Order and the Purchaser's APA shall be binding upon, enforceable against, and govern the acts of all persons including, without limitation, the Debtors and their estates, the Purchaser and its respective successors and permitted assigns, any Chapter 11 trustee hereinafter appointed for the Debtors' estates, the Committee or any trustee appointed in a Chapter 7 case if any of the Chapter 11 Cases are converted from Chapter 11 to a case or cases under Chapter 7 of the Bankruptcy Code, all creditors of, and holders of equity interests in, any Debtor (whether known or unknown), the holders of the Liens, Claims, and Interests in, against, or on all or any portion of the Purchased Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

45.   **Conflicts; Precedence**.   Nothing in any order of this Court or contained in any plan of reorganization or liquidation that may be confirmed in the cases of the Debtors, or in any subsequent or converted cases of the Debtors to cases under Chapter 7 of the Bankruptcy Code,

shall conflict with, or derogate from, the provisions of the Purchaser's APA or the terms of this Order. In the event there is any inconsistency between the Motion, the Bidding Procedures Order, the Bidding Procedures, the Purchaser's APA, or this Order, this Order shall govern in all respects.

46.     **<u>No Avoidance of Sale</u>**. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Purchaser's APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the sale of the Purchased Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

47.     **<u>Waiver of Bankruptcy Rules 6004 and 6006</u>**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Transactions and the Debtors and the Purchaser intend to close the Transactions as soon as practicable.

48.     **<u>Retention of Jurisdiction</u>**. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Purchaser's APA in all respects and to decide any disputes concerning this Order, the Purchaser's APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchaser's APA and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any Liens, Claims, and Interests and any actions, efforts, and/or conduct designed to deprive the Purchaser of

the Purchased Assets, including any and all tangible and intangible assets, personal property, goodwill, brand, and related likenesses acquired under the Purchaser's APA.

49.     **General Provisions**.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Purchaser's APA and the provisions of this Order.

51.     Neither the Purchaser nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Purchaser's APA to each of their respective obligations to close the Transactions have been satisfied or waived in accordance with the terms of the Purchaser's APA.

52.     The provisions of this Order are non-severable and mutually dependent.

53.     Notwithstanding anything contained in this Order, or in the Purchaser's APA, neither the entry of this Order, the execution of the Purchaser's APA, or the Closing of the Sale Transaction releases, remises, acquits, relinquishes, irrevocably waives, and discharges any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, liquidated or unliquidated, secured or unsecured, direct or derivative, matured or unmatured, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract or otherwise that the

Debtors ever had, now have, or may have, in each case arising or existing prior to Closing against Sonendo, Inc., PIPStek, LLC, or any of their respective predecessors, successors, assigns, subsidiaries and affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, actuaries, investment bankers and other professionals in each case acting in such capacity, as applicable, and the Debtors shall explicitly retain the right to defend against all claims as set forth in that certain action styled *PIPStek, LLC v. Biolase, Inc.*, filed in the United Stated District Court for the District of Delaware as Case No. 1:23-cv-00011-JPM. Further, Debtors shall retain an exclusive license to US Patent No. 11,723,747 in the field of dental laser tools for treating human patients and all rights to collect for past damages for infringement of US Patent No. 11,723,747.

Dated: November 15th, 2024
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE