## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Biolase, Inc., *et al.*,[1] | Case No. 24-12245 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 17, 66 and 168** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors") seeking, among other things:

(1) authority pursuant to sections 363 and 364(c) and (d) of the Bankruptcy Code to obtain debtor-in-possession secured financing (the "DIP Facility") pursuant to the following terms and agreements (collectively, the "DIP Facility Documents"): (a) the Interim Order, entered by the Court on October 3, 2024, the Second Interim Order, entered by the Court on October 28, 2024, and this final order (the "Final Order"), and (b) the *Biolase, Inc. Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility*, attached hereto as Exhibit 2, as amended, modified, and/or supplemented (the "DIP Term Sheet"),[2] by and among the Debtors, SWK Funding LLC ("SWK"), as agent (the "DIP Agent") for the lenders and other financial institutions party to the DIP Term Sheet or which extend credit thereunder (the "DIP Lenders," and collectively with the DIP Agent, the "DIP Secured Parties");

(2) the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Final Order;

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Biolase, Inc. (2441); BL Acquisition Corp. (4140); BL Acquisition II, Inc. (6022); and Model Dental Office, LLC (9372). The Debtors' headquarters are located at 27042 Towne Centre Drive, Suite 270, Foothill Ranch, CA 92610-2811.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet.

(3)    authorization for the Debtors use of cash collateral whenever or wherever acquired, and the proceeds of all collateral pledged to the Prepetition SWK Secured Parties (defined below), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein;

(4)    a grant of adequate protection to the Prepetition SWK Secured Parties (defined below) under and in connection with the Prepetition SWK Loan Documents (defined below) in accordance with the terms set forth herein;

(5)    modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h); and

(6)    a final hearing on the Motion for entry of an order authorizing the DIP Facility and use of cash collateral on a final basis.

Notice of the Motion, the relief requested therein, and the Interim Hearing, Second Interim Hearing, and Final Hearing (each as defined below) (the "Notice") having been served by the Debtors in accordance with Bankruptcy Rule 4001(c) on: (a) the Office of the U.S. Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Debtors' thirty largest unsecured creditors; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) Holland & Knight LLP, as counsel to the Prepetition SWK Secured Parties and the DIP Secured Parties; (h) Reed Smith, as counsel to the stalking horse bidder; (i) the U.S. Small Business Administration; (j) Banc of California; (k) Bank of America, N.A.; (l) any other party that has asserted a lien on or security interest in the Debtors' assets; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Court held an interim hearing with respect to the Motion on October 2, 2024 (the "Interim Hearing"), an opportunity for a second interim hearing on October 28, 2024 (the "Second Interim Hearing"), and a final hearing on November 12, 2024 (the "Final Hearing" and, together with the Interim Hearing and Second Interim Hearing, the "Hearings").

- 2 -

After the Motion and the proceedings before the Court at the Hearings; and all objections, if any, to the interim and final relief requested in the Motion having been withdrawn, resolved or overruled by the Court as reflected on the record established by the Debtors at the Hearings;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.      On October 1, 2024 (the "Petition Date"), the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code");[4]

B.      The Debtors have continued in the management and operation of their business pursuant to sections 1107 and 1108, and no trustee or examiner has been appointed;

C.      The Debtors gave notice of the Motion pursuant to Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and Bankruptcy Rules 2002 and 4001;

D.      The Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected by this Final Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

E.      On October 14, 2024, the United States Trustee appointed an official committee of unsecured creditors in these cases pursuant to section 1102 (the "Committee");

F.      The Debtors have admitted, represented and stipulated, without prejudice to the rights of third parties set forth in this Final Order, the following (collectively, the "Stipulations"):

---

[3]     To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

[4]     Unless otherwise noted, all statutory references are to the Bankruptcy Code.

(1)    as of the Petition Date, Biolase, Inc., BL Acquisition Corp., and BL Acquisition II, Inc.[5] were party to one or more of:

(x)    a Credit Agreement dated as of November 9, 2018 (such agreement, as amended and existing immediately prior to the Petition Date, the "Prepetition Credit Agreement") with SWK as agent and the other lenders party thereto;

(y)    the Guarantee and Collateral Agreement dated as of November 9, 2018 (such agreement, as amended and existing immediately prior to the Petition Date, the "Guarantee") in favor of SWK as agent;

(z)    all other documents, instruments, and agreements executed in connection with the Prepetition Credit Agreement (such agreements, collectively with the Prepetition Credit Agreement and the Guarantee, the "Prepetition SWK Loan Documents");

(2)    SWK serves as agent (in such capacity, the "Prepetition SWK Agent") under the Prepetition SWK Loan Documents.  The other lenders party to each of the Prepetition SWK Loan Documents shall be referred to in this Final Order as the "Prepetition SWK Lenders", and the Prepetition SWK Lenders and the Prepetition SWK Agent shall collectively be referred to herein as the "Prepetition SWK Secured Parties";

(3)    As of the Petition Date, the Prepetition Obligors were indebted to the Prepetition SWK Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the approximate non-contingent liquidated amount of no less than $16,195,000 as of September 26, 2024, plus prepetition interest, fees (including the Exit Fee, as defined in the Prepetition SWK Loan Documents), expenses, and other amounts arising in respect

---

[5] Biolase, Inc., BL Acquisition Corp., and BL Acquisition II, Inc. are collectively referred to herein as the "Prepetition Obligors".

of the Prepetition SWK Loan Documents obligations existing immediately prior to the Petition Date (such obligations, the "Prepetition SWK Obligations");

(4)    The Prepetition SWK Obligations were secured by valid, enforceable, properly perfected, first priority and unavoidable liens on and security interests (the "Prepetition SWK Liens") encumbering substantially all assets of the Prepetition Obligors existing immediately prior to the commencement of the Debtors' bankruptcy cases (the "Prepetition Collateral");

(5)    the DIP Secured Parties are willing to provide postpetition financing to the Debtors through the DIP Facility and the DIP Facility Documents;

(6)    the Prepetition SWK Secured Parties consent to the Debtors' use of the Prepetition Collateral and cash collateral (as such term is defined in section 363(a)) only upon the conditions contained in this Final Order and the DIP Facility Documents;

(7)    the Debtors have no claims, offsets, or other rights or causes of action against the Prepetition SWK Secured Parties that would in any manner impair, reduce or otherwise modify the Prepetition SWK Obligations or the validly perfected Prepetition SWK Liens upon the Prepetition Collateral;

(8)    the Prepetition SWK Obligations constitute valid, binding obligations of the Prepetition Obligors, enforceable in accordance with their terms, and the Prepetition Obligors and any of the guarantors will not assert any claims, counterclaims, setoffs, or defenses of any kind or nature, which in any way would affect the validity and enforceability of any of the Prepetition SWK Obligations and/or the security interests or liens of the Prepetition SWK Secured Parties upon the Prepetition Collateral, or which

would in any way reduce the obligation of the Prepetition Obligors to pay in full all of the Prepetition SWK Obligations;

(9)    the Debtors reasonably and in good faith believe that the use of Cash Collateral (defined below) and the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Facility are sufficient to fund all projected legitimate and allowable expenses of their chapter 11 cases from the Petition Date during the period to which the Budget (as approved by the DIP Agent) pertains; and

(10)    the Debtors are duly organized, validly existing corporations or limited liability companies and have the requisite power and authority to own, lease, and operate their property, including, without limitation, the DIP Collateral.  Subject to the Court's approval, the Debtors have the requisite power and authority to enter into, execute, deliver, and perform their obligations under the DIP Facility Documents and this Final Order and to incur the obligations provided for therein.  Except as may be explicitly required in the DIP Facility Documents, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other Person (other than the DIP Secured Parties), which has not already been obtained or done, is required in connection with the execution, delivery and performance by the Debtors of any of the documents required as a condition to the validity or enforceability of the DIP Facility Documents, other than entry by this Court of this Final Order;

G.    The Debtors are unable to obtain sufficient levels of unsecured credit allowable under section 503(b)(1) as an administrative expense necessary to maintain and conduct their business;

H.     The Debtors are unable to obtain secured credit except under the terms and conditions provided in this Final Order;

I.      All cash of the Prepetition Obligors, wherever located on the Petition Date (the "Cash Collateral"), represents (i) proceeds of loans or other financial accommodations provided to the Prepetition Obligors by the Prepetition SWK Secured Parties under the Prepetition SWK Loan Documents; or (ii) proceeds of the Prepetition Collateral, and constitutes cash collateral within the meaning of section 363;

J.      It is in the best interest of the Debtors' estates that they be allowed to enter into the DIP Facility to obtain postpetition secured financing from the DIP Secured Parties, and use the Prepetition Collateral and Cash Collateral subject to and in accordance with the terms of this Final Order and the DIP Facility Documents, and to grant adequate protection to the Prepetition SWK Secured Parties on account of the Prepetition SWK Obligations, on a final basis under the terms and conditions set forth herein and in the DIP Facility Documents;

K.     The Debtors believe that the extension of credit and financial accommodations under the DIP Facility and DIP Facility Documents are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration, and that the DIP Secured Parties are entitled to the protections of section 364(e);

L.      The Debtors require access to the funding available under the DIP Facility and the DIP Facility Documents to satisfy administrative expenses associated with the operation of their business as a going concern and other costs relating to the administration of these chapter 11 cases;

M.     The Prepetition SWK Secured Parties are unwilling to consent to use of the Prepetition Collateral by the Debtors, except under the terms of the DIP Facility Documents and

this Final Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e), which is applicable to the postpetition financing arrangement contemplated in the DIP Facility Documents and the use of Cash Collateral contemplated in this Final Order; and

N.    Good and sufficient cause exists for the issuance of this Final Order.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.    The Motion is granted on a final basis, as set forth herein, effective as of the Petition Date.  The Debtors are authorized, pursuant to sections 363 and 364, to enter into the DIP Facility and DIP Facility Documents, to execute such other and additional documents necessary or desired to implement the DIP Facility or DIP Facility Documents, to obtain postpetition secured financing from the DIP Secured Parties, and to use the Prepetition Collateral, Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the DIP Facility Documents and this Final Order.  The Debtors shall use the advances obtained under the DIP Facility and the DIP Collateral (including Cash Collateral) only for the purposes and in the amounts set forth in the DIP Term Sheet attached hereto as Exhibit 2 and the Budget attached hereto as Exhibit 1, subject to the terms and conditions set forth in the DIP Facility Documents. The DIP Secured Parties shall have no obligation to make DIP Facility advances in excess of the amounts and times set forth in the Draw Schedule, the Budget, and DIP Facility Documents.

2.    With respect to the Budget:

(a)  the Debtors' actual cash receipts and cash disbursements from operations line items (other than Professional Fees) shall each be adhered to, by line item, on a weekly basis and a cumulative basis for the Budget period then ending, subject to the Budget Variances described

below, provided, however, that amounts not disbursed in a line item shall be deemed to roll over to subsequent weeks;

(b) actual cash receipt and cash disbursement from operations line items (which shall not and do not include Professional Fees) shall not vary from the applicable Budget (including any amounts deemed to roll over from a previous week due to not being spent) by (i) more than ten percent (10%) by line item on a trailing three week basis or (ii) more than ten percent (10%) on a cumulative basis (such variances, the "Budget Variances");

(c) for all Professional Fees within the Budget (other than the professional fees of the DIP Secured Parties, which shall not be limited by the Budget), the Debtors shall not allow actual disbursements for each Professional Fee line item (and for the avoidance of doubt, each professional receiving Professional Fees shall be reflected on its own line item) to be more than the budgeted disbursements for such Professional Fee line item during the cumulative period from the Petition Date to the end of the period on the Budget.

3.      No proceeds of the DIP Facility or Cash Collateral shall be used to (a) permit the Debtors or any other party in interest to challenge or institute any proceeding to determine (i) the validity, perfection, or priority of any security interests in favor of the Prepetition SWK Secured Parties or the DIP Secured Parties or (ii) the enforceability of the Debtors' respective obligations or the obligations of any guarantor under the Prepetition SWK Loan Documents or DIP Facility Documents; (b) investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the Prepetition SWK Secured Parties or the DIP Secured Parties or any of their agents, attorneys, advisors or representatives, including, without limitation, claims or causes of action relating to lender liability or subordination claims; (c) investigate, commence, prosecute, or

defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtors or any guarantor under the Prepetition SWK Loan Documents or the DIP Facility Documents, or (d) fund any acquisitions, capital expenditures, capital leases, or similar expenditures other than those specifically set forth in the Budget; provided, however, that the Committee and its professionals shall be allowed to use proceeds of the DIP Facility or Cash Collateral, in an amount not to exceed twenty-five thousand dollars ($25,000), to investigate the validity of the Prepetition SWK Liens (the "Committee Budget").

4.      Pursuant to sections 363 and 364(c) and (d), the DIP Facility funds advanced pursuant to the terms of the Interim Order, Second Interim Order, and this Final Order (collectively, the "DIP Advances") shall be allowed administrative expenses of the Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' chapter 11 cases and any superseding chapter 7 cases including, without limitation, and to the extent authorized by the Bankruptcy Code, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114, subject and junior only to the Carve Out (defined below) (such claim, the "DIP Superpriority Claim"). The time of payment of the DIP Advances shall not be altered, extended or impaired without the consent of the DIP Agent by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which hereafter may be entered.

5.      Interest on the Prepetition SWK Obligations shall accrue from and after the Petition Date at the rate set forth in the Prepetition Credit Agreement and be payable along with interest

accruing on the DIP Advances, as set forth in the Budget and DIP Term Sheet. The reasonable fees and expenses of the DIP Secured Parties shall be payable without further notice, motion, or application to, order of, or hearing before, the Court (except such notice as may be required in the DIP Term Sheet); provided, however, the DIP Agent shall submit copies of its professionals' invoices to the Debtors, the U.S. Trustee and counsel for the Committee and such parties shall have ten (10) calendar days following the receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoices.

6.      Any of the Prepetition SWK Obligations advanced to the Debtors from and after September 3, 2024 shall become DIP Facility obligations under the DIP Facility Documents; provided, however, that the roll-up of the Prepetition SWK Obligations into post-petition DIP Facility obligations shall be subject to Paragraph 27 of this Final Order.

7.      Pursuant to sections 363, 364(c), and 364(d), as security for the DIP Advances and other postpetition costs payable under the DIP Facility Documents, the Debtors are hereby authorized to and are hereby deemed to grant to the DIP Agent a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien," and as so granted to the DIP Agent, the "DIP Credit Lien") in all of the Debtors' presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature whatsoever, whether real or personal, tangible or intangible, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, or tax refunds of the Debtors, wherever located, and the proceeds and products thereof (collectively, the "DIP Collateral"), excluding any causes of action that could be brought pursuant to sections 544, 545, 547, 548 of the Bankruptcy Code, or any applicable state

fraudulent transfer, fraudulent conveyance or voidable transaction statutes (the "Avoidance Actions"), but including proceeds of (and property received in respect of) Avoidance Actions ("Avoidance Proceeds").

8.      Pursuant to sections 364(c) and (d), the DIP Credit Lien shall be a first priority senior and priming lien on the DIP Collateral, subject and junior only to (a) the Carve Out and (b) valid, enforceable, properly perfected, and unavoidable prepetition Liens (including any Liens that are perfected after the Petition Date that are afforded priority due to the express relation back of the perfection of such lien to a date prior to the Petition Date as permitted by section 546(b)) that are senior to the Prepetition SWK Liens ("Senior Third Party Liens").  The DIP Credit Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtors' estates under section 551, and in no event shall any person or entity who pays (or causes to be paid) any of the obligations under the Prepetition SWK Loan Documents or DIP Facility Documents be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, the DIP Secured Parties by the terms of the DIP Facility Documents until such time as the obligations under the DIP Facility Documents and this Final Order are indefeasibly paid in full, in cash.  The DIP Credit Lien shall not be subject or subordinate to Liens arising after the Petition Date, other than Liens granted pursuant to this Final to the extent set forth in this Final Order.

9.      All rents, income, profits, cash in accounts and deposits derived from the Prepetition Collateral constitute Cash Collateral.  Provided that each of the conditions set forth in this Paragraph are satisfied, the Debtors shall be authorized to use the Cash Collateral only in accordance with the terms of the Budget, this Final Order, and the other DIP Facility Documents. The satisfaction of each of the following conditions shall constitute a condition to the Debtors'

authorization to use any Cash Collateral:  (i) no Event of Default under (and as defined in the DIP Term Sheet) shall exist or be continuing; and (ii) the Termination Date (as defined in the DIP Term Sheet) shall not have occurred.  If, on any date, any of such conditions is not satisfied, then the Debtors shall not be authorized to use any Cash Collateral unless and until such use is consented to by the DIP Agent in its reasonable discretion.  Absent further order of the Court, if the Termination Date occurs, then the Debtors shall remit to the DIP Agent, subject to payment of the Carve Out, any Cash Collateral then in the Debtors' possession for application to the DIP Facility obligations and Prepetition SWK Obligations in a manner selected by the DIP Agent in its sole discretion.

10.    Until the indefeasible payment in full of the Prepetition SWK Obligations, the Prepetition SWK Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) solely to the extent of the diminution in value of the Prepetition Collateral as a result of (a) the provisions of this Final Order granting first priority and/or priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the DIP Secured Parties, (b) the Debtors' use of the Prepetition Collateral (including Cash Collateral), (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or (d) otherwise, pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code.  The Prepetition SWK Agent, on behalf of and for the benefit of the Prepetition SWK Secured Parties, is hereby granted, solely to the extent of diminution in value of the Prepetition SWK Liens in the Prepetition Collateral from and after the Petition Date the following:

A.    a Lien in all DIP Collateral (the "Prepetition SWK Adequate Protection Lien") junior only to (i) the Carve Out, (ii) the DIP Credit Lien, and (iii) Senior Third Party Liens; and

B. a postpetition superpriority administrative expense claim (the "Prepetition SWK Adequate Protection Claim") against the Debtors with recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof under sections 503 and 507 against the Debtors' estates to the extent the Prepetition SWK Adequate Protection Lien does not adequately protect against the diminution in value of the Prepetition SWK Liens, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors or their estates and over all other administrative expenses of any kind, including, without limitation, and to the extent authorized by the Bankruptcy Code, those specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, or otherwise and including those resulting from the conversion of these chapter 11 cases pursuant to section 1112 of the Bankruptcy Code; subject and junior only to the Carve Out and the DIP Advances.

11. Nothing herein shall be deemed to be a waiver by any Prepetition SWK Secured Party of its right to request additional or further protection of its interests in any property of the Debtors, to move for relief from the automatic stay (if such relief is required), to seek the appointment of a trustee or examiner or the dismissal of any of the Debtors' bankruptcy cases, or to request any other relief.

12. The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtors and the DIP Agent to implement and perform the DIP Facility and the DIP Facility Documents, and (b) the creation and perfection of all Liens granted or permitted by this Final Order.  The Debtors and the holders of any DIP Credit Lien or Prepetition SWK Adequate Protection Lien shall not be required to enter into any additional security agreements to create,

memorialize, and/or perfect any such liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be and are deemed valid, binding, enforceable and automatically perfected by the docket entry of this Final Order by the Clerk of the Court.  If, however, the holder of any DIP Credit Lien or Prepetition SWK Adequate Protection Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record or serve any such financing statements or other documents with respect to any such Lien, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Final Order by the Clerk of the Court or at such other time as the applicable recording offices are authorized to deem the recording to have been made.  The holders of any DIP Credit Lien, Prepetition SWK Lien, or Prepetition SWK Adequate Protection Lien are hereby relieved of any requirement to file proofs of claim in the Debtors' bankruptcy cases with respect to any such Liens and the claims secured thereby, but any such holder may in its sole and absolute discretion file any such proof of claim.

13.    The DIP Credit Lien, DIP Superpriority Claims, Prepetition SWK Adequate Protection Liens, and Prepetition SWK Adequate Protection Claim shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve Out"):

A.    all fees required to be paid to the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) plus interest at the statutory rate (collectively, the "Statutory Fees"), which Statutory Fees shall not be limited by any Budget;

B.    all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b);

C.      all unpaid postpetition fees and expenses of the professionals retained by

the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtors'

Professionals") and by the Committee pursuant to sections 328 or 1103 of the Bankruptcy

Code (the "Committee Professionals" and, together with the Debtors' Professionals, the

"Chapter 11 Professionals"), but only to the extent that such fees and expenses are (i)

incurred before or on the first Business Day after delivery by the DIP Agent of a notice of

a Termination Event, (ii) within the cumulative amounts set forth in the Budget approved

by SWK for such Chapter 11 Professional as of the date of the Termination Event, and (iii)

allowed at any time by the Bankruptcy Court under sections 330, 331, or 363 of the

Bankruptcy Code; and

D.      postpetition fees and expenses of (i) the Debtors' Professionals incurred

after the first Business Day following delivery by the DIP Agent of a notice of the

occurrence of a Termination Event in an aggregate amount not to exceed $100,000 to the

extent such fees and expenses are allowed at any time by the Bankruptcy Court under

sections 330, 331, or 363 of the Bankruptcy Code and (ii) the Committee Professionals

incurred after the first Business Day following delivery by the DIP Agent of a notice of the

occurrence of a Termination Event in an aggregate amount not to exceed $15,000, to the

extent such fees and expenses are allowed at any time by the Bankruptcy Court under

sections 330, 331, or 363 of the Bankruptcy Code.

provided, however, that in no event shall the Carve Out for each Chapter 11 Professional exceed

the cumulative amounts for postpetition fees set forth for such Chapter 11 Professional in the

Budget as of the applicable date of determination provided, further however, that the Carve Out

for Chapter 11 Professional fees shall first be paid from any retainers or any professional expense

escrow account established by the Debtors.  Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Agent or DIP Secured Parties with respect to the Carve Out shall be DIP Advances and such obligations shall be secured by the DIP Credit Lien.  As used in this Final Order, the term "Termination Event" shall mean the occurrence of the earlier of: (i) an Event of Default under the DIP Facility; or (ii) the Debtors' failure to comply with the terms of the DIP Financing Documents (including, without limitation, their failure to comply with the Budget, subject to any approved variances).  Further, the payment of the fees or costs of any Chapter 11 Professional shall be subject to court approval, and the DIP Agent and the DIP Secured Parties reserve the right to object to any Chapter 11 Professional's application for payment.

14.     Neither the payment of any Chapter 11 Professional fees, nor the Carve Out shall include payment for any fees and expenses, if any, of the Chapter 11 Professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.     the initiation, joinder or prosecution of any action contesting the indebtedness owed to DIP Secured Parties or the Prepetition SWK Secured Parties, or the validity of any liens granted to any of such parties, provided, however, that the Committee and its professionals shall be allowed to use the Committee Budget to investigate the validity of the Prepetition SWK Liens;

B.     preventing, hindering or otherwise delaying (or supporting any other person or entity in preventing, hindering or otherwise delaying), whether directly or indirectly, the exercise by the DIP Agent or the Prepetition SWK Agent of any of its rights and remedies under the Interim Order, the Second Interim Order, this Final Order, Prepetition SWK Loan Documents, or DIP Facility Documents;

       C.       the commencement, support, or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Secured Parties, Prepetition SWK Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Secured Parties or Prepetition SWK Secured Parties, or any of them, under Chapter 5 of the Bankruptcy Code;

       D.       any request to borrow money other than pursuant to the terms of the Interim Order, the Second Interim Order, this Final Order, or the DIP Facility Documents;

       E.       with respect to the Debtors, any of the Debtors' Professionals, or any of their successors or assigns (including, without limitation, and subject to Paragraph 27 hereof, any trustee, responsible officer, examiner, estates administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtors with respect to any matter to be released, waived or specified as not subject to challenge by the Debtors pursuant to the Interim Order, the Second Interim Order, or this Final Order (including, without limitation, Paragraphs 24, 25, and 26 herein); or

       F.       For any other purpose for which proceeds of the DIP Facility may not be used pursuant to the DIP Term Sheet.

15.     Effective as of the time of commencement of the Debtors' chapter 11 cases on the Petition Date:

A.      the Debtors waive irrevocably all claims and rights, if any, they or their estates might otherwise assert against the Prepetition Collateral or DIP Collateral pursuant to section 506(c), section 105(a), or any other applicable law;

B.      except from and pursuant to the terms of the Carve Out, no entity in the course of the Debtors' bankruptcy cases shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtors or the Debtors' estates) any cost or expense of preservation or disposition of the Prepetition Collateral or DIP Collateral, including, without limitation, expenses and charges as provided in section 506(c), section 105(a), or any other applicable law;

C.      except from and pursuant to the terms of the Carve Out, no entity shall be permitted to recover from the DIP Collateral or Prepetition Collateral, or assert against any DIP Secured Party or any Prepetition SWK Secured Party, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in the Budget; and

D.      the Prepetition SWK Secured Parties and the DIP Secured Parties shall not be subject to the "equities of the case" exception of section 552(b), the equitable doctrine of "marshaling," or any similar claim or doctrine, with respect to any DIP Collateral or Prepetition Collateral.

16.      So long as the DIP Facility obligations remain outstanding, unless consented to in writing by the DIP Agent, it shall be an Event of Default for the Debtors to seek entry of any further orders in their chapter 11 cases which authorize (a) under section 363, the use of Cash

Collateral; (b) the obtaining of credit or the incurring of indebtedness pursuant to sections 364(c) or 364(d) that does not repay the DIP Facility in full, in cash, (c) the return of goods pursuant to section 546(h) to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to section 553 or otherwise, or (d) any other grant of rights against the Debtors or their estates that is secured by a Lien on the DIP Collateral or is entitled to superpriority administrative status that does not repay the DIP Facility in full, in cash.

17.     Upon the occurrence of: (i) an Event of Default (as such term is defined in the DIP Term Sheet); (ii) the Debtors' failure to comply with the terms of this Final Order (including, without limitation, their failure to comply with the Budget, subject to any approved variances); or (iii) the Debtors' failure to comply with any of the Milestones in the DIP Term Sheet, and the giving of written notice thereof by the DIP Agent to counsel to the Debtors, the Committee, and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), then the DIP Agent shall be fully authorized, in its sole discretion to (i) cease making DIP Facility advances to the Debtors; (ii) terminate the Debtors' use of Cash Collateral pursuant to this Final Order and the Budget; and (iii) immediately terminate the DIP Facility and demand repayment of the DIP Facility obligations then outstanding.

18.     Further, upon the occurrence of an Event of Default and transmission of a Default Notice or upon the Termination Date:

A.     with respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Committee, and the U.S. Trustee shall have five (5) business days from the date of the Default Notice (the "Remedy Notice Period") to seek an emergency

hearing with the Court on notice to the DIP Agent (a) enjoining or restraining the DIP Secured Parties from taking action or exercising rights and remedies (other than any rights and remedies set forth in Paragraph 17 herein, which may be exercised immediately upon the satisfaction of the conditions set forth in such paragraph) based upon the Event of Default specified in the Default Notice; or (b) challenging whether an Event of Default in the Default Notice has occurred or is continuing without cure (a "Restraint on Remedies"); *provided, however,* that if an emergency hearing is requested to be heard before the end of the Remedy Notice Period but is scheduled for a later date by the Court, then the Remedy Notice Period shall be automatically extended until the Court issues an order or other ruling with respect thereto.  During the Remedy Notice Period, including as extended pursuant to the immediately preceding sentence of this Final Order, the DIP Agent shall refrain from exercising its rights and remedies (other than those set forth in Paragraph 17 and below). Immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court, or with respect to and upon the Maturity Date, immediately apply:

> (1)     the DIP Agent shall have the right, free of the restrictions of section 362 or under any other section of the Bankruptcy Code or Bankruptcy Rules (including, without limitation, Bankruptcy Rule 4001(a)), to exercise contractual, legal and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (defined below) of the DIP Collateral to the repayment of the DIP Facility obligations and Prepetition SWK Obligations; and

(2)      subject to applicable law, the DIP Agent, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with the Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the Debtors.

19.      The Debtors shall provide the DIP Agent with (i) all financial statements, certificates, and reports required pursuant to the DIP Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Agent shall request from the Debtors.  The DIP Agent and its representatives shall have reasonable access during ordinary business hours and following reasonable advance notice to the Debtors' business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' business.

20.      For purposes of this Final Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code of the State of New York) and (ii) any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other manner of disposition of the DIP Collateral, whether in the ordinary course of the Debtors' business (including without limitation accounts, receivables, and other proceeds arising from the Debtors' sales of goods and/or performance of services) or other than in the ordinary course of the Debtors' business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of DIP Collateral other than in the ordinary course of the Debtors' business, including without limitation any sale authorized pursuant to section 363.

21.      The Debtors shall maintain in full force and effect the deposit or other accounts maintained by or on behalf of the Debtors pursuant to the Prepetition SWK Loan Documents for

the collection of cash obtained in the ordinary course of the Debtors' business, and the cash management systems, treasury management systems, and payment procedures under which such accounts and systems are administered.  In furtherance of the foregoing, the DIP Agent shall be deemed to have control of all of the Debtors' bank accounts, and any financial institutions in which such accounts of the Debtors are located are hereby authorized to act in accordance with any request of the DIP Agent concerning such accounts, including, without limitation, requests to turnover funds therein without offset or deduction of any kind.

22.     The Debtors and any successors to the Debtors, including without limitation any successor trustee or trustees, shall assign or direct to the DIP Agent any and all Proceeds realized in any Disposition of any DIP Collateral, and immediately deliver any and all such Proceeds which come into their possession to the DIP Agent in the form received; provided, however, that the foregoing shall be subject in all respects to (a) the Budget, (b) payment of the Carve Out, (c) the priorities of the DIP Credit Lien granted by this Final Order, and (d) Paragraph 30 of this Final Order.  The foregoing is without prejudice to the rights of (a) the DIP Agent, the Committee, or any other party to object to any proposed Disposition, (b) any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien, or (c) the rights of third parties set forth below with respect to a Challenge Action and the remedies that may result from a successful Challenge Action.  Subject to section 363(k), the DIP Agent and, subject further to Paragraph 27 hereof, the Prepetition SWK Agent are hereby authorized to credit bid all or any of the obligations under the DIP Facility and Prepetition SWK Loan Documents at any Disposition of any Prepetition Collateral and/or DIP Collateral.

23.     All Proceeds retained by the DIP Agent shall be applied to the repayment of the Prepetition SWK Obligations and DIP Facility obligations, in a manner selected by the DIP Agent,

until such obligations are paid in full; *provided, however*, that the foregoing shall be subject in all respects to the terms and the priorities of liens under this Final Order.  Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability; *provided that*, applications of Proceeds to the repayment of the Prepetition SWK Obligations shall only be free and clear of any claim, charge, assessment or other liability subject to Paragraph 27 hereof.

24.    Subject to the right to bring a Challenge Action as set forth in Paragraph 27 below, upon entry of this Final Order:

A.    the Stipulations shall be binding upon the Debtors and all other persons, entities, and/or parties in all circumstances;

B.    the validity, extent, priority, perfection, enforceability and non-avoidability of the Prepetition SWK Secured Parties' validly perfected prepetition claims and liens against the Prepetition Obligors and the Prepetition Collateral shall not be subject to challenge by the Debtors or any other person, entity, or party; and

C.    neither the Debtors, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of any of the Prepetition SWK Secured Parties prior to the Petition Date.

25.    In consideration of the furnishing of the DIP Facility, the Debtors, subject to the rights of another party to bring a Challenge Action during the Review Period, hereby absolutely release and forever discharge each of the Prepetition SWK Secured Parties and their affiliates, officers, directors, employees, attorneys, and other representatives (the "Releasees") from any and all claims and causes of action of every kind and nature that exist on the date hereof with respect to or relating to the Prepetition Credit Agreement or the Prepetition SWK Loan Documents,

including (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Prepetition SWK Secured Parties (collectively, the "Prepetition Released Claims"); provided, however, that such release shall not be effective with respect to the Debtors' bankruptcy estates, until the expiration of the Challenge Period without a Challenge Action being filed, and if filed, until such Challenge Action is subject to a final and non-appealable judgment and order entered in favor of the Prepetition SWK Secured Parties.  In addition, upon the indefeasible payment, in full, in cash, of all DIP Facility obligations owed to the DIP Secured Parties arising under this Final Order and the DIP Facility Documents, the DIP Secured Parties shall be released by the Debtors and their estates from any and all obligations, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the DIP Facility Documents.

26.     The Debtors hereby absolutely, unconditionally, and irrevocably covenant and agree with each Releasee that they will not sue (at law, in equity, or in any other proceeding) any Releasee on the basis of any Prepetition Released Claims released and discharged by the Debtors pursuant to this Final Order.

27.     Notwithstanding any other provisions of this Final Order, but subject to Paragraph 41 of this Final Order, any interested party (other than the Debtors or the Debtors' Professionals) in these cases (including, without limitation, the Committee) shall have until December 17, 2024 (such period, the "Challenge Period"), to commence an adversary proceeding or contested matter against the Prepetition SWK Secured Parties (as applicable) for the purpose (collectively, a "Challenge Action") of:

A.      challenging the validity, extent, priority, perfection, enforceability and non-avoidability of the Prepetition SWK Secured Parties' Liens (as applicable) against the Prepetition Obligors;

B.      seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of any of the Prepetition SWK Secured Parties (as applicable) prior to the Petition Date;

C.      seeking damages or equitable relief against any of the Prepetition SWK Secured Parties (as applicable) arising from or related to their prepetition business and lending relationships with the Prepetition Obligors, including without limitation equitable subordination, recharacterization, lender liability and deepening insolvency claims and causes of action; or

D.      challenging any other matter to be waived or released pursuant to this Final Order (including, without limitation, pursuant to Paragraphs 24, 25, and 26) or any stipulations contained therein.

If a chapter 7 or chapter 11 trustee is appointed or elected during the Challenge Period, then such period with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected.  For the avoidance of doubt, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until the expiration of the applicable Challenge Period, and thereafter for the duration of any Challenge Action commenced pursuant to this Paragraph (whether commenced by such trustee or by any other party in interest on behalf of the Debtors' estates), be deemed to be a

party other than the Debtors and shall not, for purposes of such Challenge Action, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtors in this Final Order.

28.     All parties in interest, including without limitation the Committee, that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge Action and shall be bound by the waivers, Stipulations, and terms set forth in this Final Order (including Paragraphs 24, 25, and 26 of this Final Order).  Any Challenge Action filed shall prohibit application of this paragraph only to the extent of the specific matters set forth in such Challenge Action on the date of filing.

29.     The respective legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff of the Prepetition SWK Secured Parties in response to any such Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action.  Notwithstanding anything to the contrary in this Final Order, the Court expressly reserves the right to unwind any discretionary roll-up of Prepetition SWK Obligations into post-petition DIP Facility obligations, or to order other appropriate relief against the Prepetition SWK Secured Parties in the event there is a timely and successful Challenge Action by any party in interest to the validity, enforceability, extent, perfection or priority of the Prepetition SWK Liens or the amount, validity, or enforceability of the Prepetition SWK Obligations.

30.     Upon any closing of the 363 Sale, the Winning Bidder is directed to pay $13,000,000 directly to the DIP Agent, for immediate application to the DIP Credit Facility Obligations and Prepetition SWK Obligations, which application shall become indefeasible with

respect to any DIP Credit Facility Obligations and Prepetition SWK Obligations that are not subject to a timely Challenge Action commenced prior to the expiration of the Challenge Period.

31.     In making decisions to advance any extensions of credit to the Debtors pursuant to the DIP Facility (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Agent and the DIP Secured Parties shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "control person," "responsible person" or other "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute) by virtue of providing the DIP Facility, and the DIP Agent and the DIP Secured Parties' relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Secured Parties and the Debtors.

32.     This Final Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Secured Parties, the Prepetition SWK Secured Parties, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estates administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action and the Carve Out, no rights are created under this Final Order for the benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

33.     Any order dismissing these chapter 11 cases under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a)

the DIP Secured Parties' liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Facility obligations are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, the DIP Credit Lien, the Prepetition SWK Adequate Protection Liens, and the Prepetition SWK Adequate Protection Claims.

34.     To the extent that any of the provisions of this Final Order conflict with any provisions of the DIP Term Sheet, this Final Order shall control and supersede the conflicting provisions therein.

35.     The terms and conditions of this Final Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.   Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Fed R. Bankr. P. 4001(a)(3) and 6004(a) are hereby waived for good and sufficient cause.

36.     The DIP Secured Parties and Prepetition SWK Secured Parties shall be entitled to the benefits and protections of this Final Order, including (a) the adequate protection afforded to the Prepetition SWK Secured Parties set forth in this Final Order, and (b) the protections afforded pursuant to section 364(e), with respect to all loans, advances, and other financial, accommodations made by them pursuant to this Final Order.  The DIP Credit Lien, the priority afforded the DIP Advances, and the adequate protection afforded to the Prepetition SWK Secured Parties, as set forth in this Final Order, shall be binding on the Debtors and any successor trustee or trustees even if this Final Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Final Order.  Except

as provided herein, no Proceeds, Cash Collateral or Carve Out may be used by any party in interest seeking to modify any of the rights granted to the DIP Agent hereunder or in the DIP Facility Documents.

37.     The Debtors and the DIP Agent may implement non-material modifications of the DIP Term Sheet without the need for notice or further approval of the Court, <u>provided, however,</u> that copies of such amendments will be provided to the U.S. Trustee and the Committee.  Any material modification of the DIP Term Sheet shall only be permitted upon notice and further order of the Court.  The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material amendment, modification, waiver, or supplement on an expedited basis.

38.     The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtors' performance under this Final Order or the DIP Facility Documents, including, without limitation, (a) the execution of the DIP Facility Documents, (b) the payment of the fees and other expenses described herein or in the DIP Facility Documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees, and facility fees.

39.     The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on terms and conditions to which the Debtors and the DIP Agent have agreed.  Thus, each of the terms and conditions constitutes a part of the authorization under sections 364 of the Bankruptcy Code, and is, therefore, subject to the protections in section 364(e) of the Bankruptcy Code, regardless of (i) any stay, modification, amendment, vacating, or reversal of this Final Order or the DIP Facility Documents or any term hereunder or thereunder; or (ii) the dismissal or conversion of these chapter 11 cases.

40.     The Debtors are authorized to open a new bank account or designate an existing bank account that shall function as a segregated account held in trust for and exclusively available for the payment of fees and expenses of Chapter 11 Professionals pursuant to this Final Order (the "Professional Fees Escrow Account") in the amount equal to, but not to exceed, the professional fees budgeted for professionals retained by the Debtor and the Committee (the "Budgeted Professional Expenses").  Except for funding the Carve Out from the DIP Collateral, neither the Prepetition SWK Secured Parties nor the DIP Secured Parties shall have any responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Debtors fund the Professional Fees Escrow Account or that the Professional Fees Escrow Account has funds equal to the aggregate amount of the Budgeted Professional Expenses for any applicable period.  The Debtors are authorized and directed to fund the Professional Fees Escrow Account on a weekly basis in an amount up to, but not to exceed, the Budgeted Professional Expenses for that week.  Such funds shall be held in an identifiable segregated account for the benefit of the Professionals to be applied to the professional fees of the Chapter 11 Professionals that are approved for payment pursuant to one or more orders of this Court.  Any professional fees payable to the Chapter 11 Professionals shall be paid first out of the Professional Fees Escrow Account.  Any excess amounts in the Professional Fees Escrow Account after payment of such professional fees shall be subject in all respects to the DIP Liens.  The funds in the Professional Fees Escrow Account shall remain DIP Collateral (subject to the Carve Out) unless and until such funds are paid to the Chapter 11 Professionals.

41.     The Debtors, the Committee, and SWK (collectively, the Debtors, the Committee, and SWK, the "Bound Parties") have agreed to resolve the Committee's objections to entry of this Final Order and the Sale Order (the "Committee Resolution") on the following terms:

A.      The Committee shall support and not object to the sale process, the consummation of the 363 Sale, entry of the Sale Order, and entry of this Final Order.

B.      $13,000,000 of the proceeds from the 363 Sale (the "Sale Proceeds") shall be paid to SWK within three (3) business days of closing of the 363 Sale.

C.      The Committee waives its right to assert or assist (directly or indirectly) in asserting a Challenge Action with such waiver being effective upon the closing of the 363 Sale.

D.      The Budget shall include:

(i)      an additional line item titled "Liquidating Trust Funding" in the amount of $300,000 funded from the Sale Proceeds (the "Liquidating Trust Funding") to be used to pursuant to the terms of a confirmed chapter 11 plan to (a) establish and fund a liquidating trust for the benefit of holders of allowed general unsecured claims (including the deficiency claims of the Prepetition SWK Secured Parties and the DIP Secured Parties (collectively, the "SWK Deficiency Claims")) and (b) fund the wind down costs of the Debtors and their foreign subsidiaries; provided, however, that the Prepetition SWK Secured Parties and the DIP Secured Parties will retain a lien on the foregoing $300,000 and will be entitled to any amounts remaining after payment in full of the costs described in the preceding subclauses (a) and (b);

(ii)     an additional line item titled ("Administrative Claim Contingency") in the amount of $550,000 funded from the Sale Proceeds to be used to pay administrative expense claims (other than the fees and expenses of Chapter

- 32 -

11 Professionals, which fees and expenses are separately accounted for in the Budget); provided, however, that the Prepetition SWK Secured Parties and the DIP Secured Parties will retain a lien on the foregoing $550,000 and will be entitled to any amounts remaining after payment in full of the administrative expense claims described in this clause ii; and

(iii)    an additional line item titled ("GUC Recovery Amount") in the amount of $300,000 funded from the Sale Proceeds to be used to provide a recovery under a confirmed chapter 11 plan to general unsecured creditors; provided, however, that the Prepetition SWK Secured Parties and the DIP Secured Parties will retain a lien on the foregoing $300,000 until the effective date of a confirmed chapter 11 plan in these cases; and

(iv)    the line item for Committee professional fees shall be increased to $550,000 in the aggregate.

E.    The Debtors, the Committee and SWK will negotiate and file a chapter 11 plan which will provide a ratable distribution to holders of all allowed general unsecured claims (including the SWK Deficiency Claims), equal to the lesser of (a) the GUC Recovery Amount and (b) the dollar amount equal to a 10% recovery to holders of all allowed general unsecured claims (excluding the SWK Deficiency Claims) (such dollar amount, the "10% Distribution").  If the 10% Distribution is less than $300,000, then the Prepetition SWK Secured Parties and the DIP Secured Parties will be entitled to the difference between the foregoing GUC Recovery Amount  and the 10% Distribution.  By way of example, if the 10% Distribution equals $200,000, then the Prepetition SWK

- 33 -

Secured Parties and the DIP Secured Parties will be entitled to $100,000 (*i.e.*, the difference between $300,000 and $200,000).

F.      The initiation of any Challenge Action or the filing of a standing motion to bring a Challenge Action shall terminate all obligations pursuant to this paragraph.

G.      The Debtors have agreed to file a plan consistent with the terms of the Committee Resolution as set forth in this Final Order (the "Agreed Plan") and have agreed to consult with the Committee and SWK with respect to the form and substance of the Agreed Plan, including the selection of a liquidating trustee proposed by the Committee, to ensure that the terms of the Agreed Plan are consistent in all aspects with the Committee Resolution.  The Agreed Plan shall provide for (i) customary releases and exculpations of the Debtors and Committee professionals and the Committee members solely in such capacity as members and (ii) customary mutual releases by and among the Debtors, SWK, and the Committee relating to the Debtors, the Debtors' estates, their business operations, and the 363 Sale.  The Committee Resolution shall bind each of the Bound Parties to work in good faith to formulate and prosecute the Agreed Plan.  Nothing contained in this Final Order constitutes any finding of fact or conclusion of law with respect to whether the Agreed Plan satisfies the confirmation requirements set forth in section 1129 of the Bankruptcy Code, nor does this paragraph bind any party other than the Bound Parties.

H.      Notwithstanding anything to the contrary in this Final Order or the DIP Term Sheet, the DIP Term Sheet is amended to provide that:

(i)      the Maturity Date (as defined in the DIP Term Sheet) shall mean February 28, 2025, or such later date to which SWK consents in writing; and

(ii)    the date which is the closing date of the 363 Sale shall not be a

Termination Date (as defined in the DIP Term Sheet).

**Dated: November 15th, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**